## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FRANCISCO ALBERTO ROMERO-ARRIZABAL, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| FERNANDO RAMOS, et al. | ) ) |
| Defendants. | ) ) |

No. 16 C 5967

Judge John J. Tharp, Jr.

## ORDER

For the reasons set forth below, the defendants' motion to dismiss [58] is granted. The amended complaint is dismissed without prejudice. Plaintiff is given leave to replead on or before October 6, 2017.

## STATEMENT

Plaintiff Francisco Alberto Romero-Arrizabal brings his Amended Complaint pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the defendants, all U.S. Immigration and Customs Enforcement ("ICE") officers, violated his First and Eighth Amendment rights while he was in their custody. Specifically, Romero-Arrizabal alleges that ICE officers violated his First Amendment right to file grievances by "threatening physical harm and intimidating Plaintiff into withdrawing his grievance" and the Eighth Amendment's prohibition on cruel and unusual punishment by "abandoning Plaintiff in the back of [a] van under extreme conditions." Amended Complaint ("Compl.") at ¶ 20, 24, ECF No. 43. Defendants Fernando Ramos and Officer Rangel[1] have moved to dismiss the Amended Complaint in its entirety.

As it must on a motion to dismiss, the Court accepts the well pled facts in the complaint as true and draws all permissible inferences in favor of the plaintiff. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012). On July 30, 2014, plaintiff Francisco Alberto Romero-Arrizabal, while in ICE custody, was transported to the "Broadview Service Staying ICE facility"[2] with approximately ten other detainees. Compl. ¶ 9. Upon arrival, while the other inmates were unloaded from the transport van, Romero-Arrizabal was left shackled in the van for 30 to 40 minutes under extreme temperatures without water leading to unspecified "permanent" injuries. *Id.* at ¶ 10-12. After the incident, Romero-Arrizabal filed a grievance against the ICE officers[3]

---

[1] Deportation Officer Rangel's first name is not in the record.

[2] Presumably, this is a reference to ICE's Broadview Service *Staging* Area. See http://trac.syr.edu/immigration/detention/201509/BSAHOLD/tran/.

[3] The ICE officers are not named in the complaint other than as Doe defendants; it is not clear if Romero-Arrizabal was able to name them in the grievance or not.

who left him in the van. *Id.* at ¶ 13. In response to his filed grievance, Romero-Arrizabal alleges that he was retaliated against, threatened physically, and intimidated by ICE Supervisor Fernando Ramos, Deportation Officer Rangel, "and/or John Does 1-4." *Id.* at ¶ 14. On January 21, 2015, "Ramos, Rangel and/or John Does 1-4" misrepresented the status of his Board of Immigration Appeals case to improperly obtain Romero-Arrizabal's signature on a deportation order. *Id.* at ¶ 15. When Romero-Arrizabal refused to sign the order "Ramos, Rangel and/or John Does 1-4" continued to threaten and intimidate him. *Id.* at ¶ 16.

Romero-Arrizabal filed this suit against Ramos, Rangel, and five John Doe ICE officers on December 22, 2015, claiming the van incident violated his Eighth Amendment rights while the retaliation and intimidation violated his First Amendment rights. Defendant Ramos moved to dismiss Romero-Arrizabal's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 3, 2017. Defendant Rangel joined the motion without raising further arguments. *See* ECF No. 58.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A plaintiff does not need "detailed factual allegations," but more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are required. *Twombly*, 550 U.S. at 555. Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. Rule Civ. P. 8(a)(2)).

### I. First Amendment Claim

Romero-Arrizabal's complaint fails to state a claim that the defendants violated Romero-Arrizabal's First Amendment rights. While Romero-Arrizabal alleges that "Defendants Ramos, Rangel and/or John Does 1-4" subjected him to physical threats and intimidation, there is nothing in his complaint—or response brief—that sufficiently ties any threats or intimidation to Ramos. *See* Compl. ¶ 14; *see also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1986) (a successful § 1983 claim requires "[a] causal connection, or an affirmative link, between the misconduct complained of and the official sued"). While a plaintiff need not provide detailed factual allegations, *see Twombly*, 550 U.S. at 555, Romero-Arrizabal's failure to tie any action to the defendants personally results in statements that are conclusory rather than factual. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding that allegations that "one or more of the Defendants" had engaged in acts depriving the plaintiff of his constitutional rights was "vague phrasing, which does not adequately connect specific litigants to illegal acts"). Further, there is nothing in the complaint that indicates what Ramos said or did that constituted a threat or

intimidation, so the complaint fails to provide sufficient notice of the allegations against him. *See id.* at 581. For example, it is unclear if Ramos himself directly attempted to obtain the signature on Romero-Arrizabal's deportation order, ordered a subordinate to do so, or had nothing to do with it whatsoever.

Romero-Arrizabal argues that he requires discovery to determine "the identity and all the specific activities of each individual actor." Resp. at 6. Pretrial discovery has been allowed in situations where the victim lacks knowledge that is in the hands of the defendant, such as where circumstances make it impossible for the plaintiff to identify the injuring party. *See Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) (" If a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous."); *Santiago v. Walls*, 599 F.3d 749, 759-60 (7th Cir. 2010) ("Mr. Santiago cannot know for certain what Warden Wells knew without discovery."). Although Romero-Arrizabal may not have all the facts, he should know more than he has pled here. How many people were present during the alleged acts of intimidation? Were Ramos or Rangel personally present during the alleged events? Were the officers who intimidated him the same as the ones who attempted to improperly obtain his signature on the deportation order? The Court does not require Romero-Arrizabal to be able to identify all the parties involved in the alleged conduct, but he does need to do more to give the Court some idea of the factual basis for his claims. As written, the complaint does nothing more than raise the mere possibility that one or more defendants violated Romero-Arrizabal's First Amendment rights. For that reason, Count I is dismissed without prejudice.

## II. Eighth Amendment Claim[4]

In prisons, the "unnecessary and wonton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prisoners are entitled to conditions that meet "the minimal civilized measure of life's necessities." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Conditions "may be harsh and uncomfortable without violating the Eighth Amendment's prohibition on cruel and unusual punishment." *Id*. A claim of constitutionally inadequate confinement requires a two-step analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities;" and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). Deliberate indifference "means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*

Romero-Arrizabal has failed to satisfy the first prong with his allegation that he was left for 30-40 minutes alone in a hot transport van. The Eighth Amendment prohibition on cruel and unusual punishment guarantees those in custody "a right to be free from extreme hot and cold temperatures." *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986). Both the severity of the heat and its duration must be taken into consideration when determining whether the heat was unconstitutionally excessive. *See Dixon*, 114 F.3d at 642 ("[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional.").

Romero-Arrizabal has not pled sufficient facts that plausibly indicate that the conditions in the transport van were so severe that they constitute an Eighth Amendment violation. He alleges that he was left shackled in a dark, unventilated van without hydration for 30-40 minutes

---

[4] In asserting his claim regarding being held in the van, the plaintiff invokes the Eighth Amendment, but the Eighth Amendment applies to convicted prisoners, not to detainees like the plaintiff. *Estate of Clark v. Walker*, 865 F.3d 544, 546 (7th Cir. 2017). Claims of detainees relating to conditions of confinement are properly analyzed under the due process clause of the 14th Amendment. The Seventh Circuit has repeatedly acknowledged this distinction, but has not addressed whether it has any substantive implications. Instead, the Court of Appeals has routinely concluded that because detainees are entitled to at least as much protection as prisoners, where a plaintiff fails to state a claim for a violation based on the Eighth Amendment standards, a claim under the 14th Amendment would also necessarily fail. *See, e.g.*, *id.*; *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003) ("as a pretrial detainee, [plaintiff] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment "); *Jackson v. Illinois Medi–Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) ("[W]hen considering a pretrial detainee's claim of inadequate medical care, we frequently turn to the analogous standards of Eighth Amendment jurisprudence.") (citations omitted). As the plaintiff's claim falls short under the Eighth Amendment, the Court takes the same approach here.

in extreme July heat. Even when drawing all reasonable inferences to what an "extreme" temperature would be in late-July,[5] such details do not support actionable conditions. Romero-Arrizabal draws comparisons to *Hope v. Pelzer*, 536 U.S. 730 (2002), where the Supreme Court found an Eighth Amendment violation when prison guards handcuffed an inmate to a hitching post in the sun with minimal water. *Id*. at 738. Yet the prisoner in *Hope* was left in the sun for seven hours – significantly longer than the 30-40 minutes Romero-Arrizabal alleges. Courts have regularly found that exposure to heat for under an hour is not sufficient to violate a constitutional right. *See Byrd v. Brannigan*, No. 98 C 2092, 2000 WL 88689, at *5 (N.D. Ill. Jan. 21, 2000) (finding as a matter of law that leaving prisoner "hyperventilating in a ninety-degree car for over a half-hour" does not "rise to the level of a constitutional violation"); *Glenn v City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (post-arrest detention for approximately one-half hour in unventilated police vehicle in the sun did not violate the Fourth Amendment); *Emmerick v. City of Gatlinburg, Tenn.*, No. 3:08-CV-305, 2010 WL 3861047, at *4 (E.D. Tenn. Sept. 24, 2010) ("[police] did not violate a clearly established constitutional right when they left plaintiff in an unventilated police car for 30 minutes").

Being left in a hot, unventilated van for a short period of time does not rise to the level of a denial of the minimal civilized measure of life's necessities. Romero-Arrizabal's allegations regarding the conditions in the transport van do not satisfy the first requirement of an Eighth Amendment claim, so Count II is dismissed without prejudice.

\* \* \*

The defendants' motion to dismiss is granted without prejudice. To the extent that Romero-Arrizabal can plead further facts, particularly with regard to his First Amendment claim, he is granted leave to amend on or before October 6, 2017.

Dated: September 8, 2017

John J. Tharp, Jr.
United States District Judge

---

[5] According to the National Oceanic and Atmospheric Administration the high temperature for July 30, 2014 was only 79 degrees Fahrenheit at Chicago's O'Hare International Airport. *Climate Data Online*, National Centers for Environmental Information (last visited July 6, 2017), https://www.ncdc.noaa.gov/cdo-web/search. Judges are permitted to take judicial notice of weather data. *See Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015).