# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANCISCO ALBERTO ROMERO-ARRIZABAL, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 16-cv-5967 |
| ICE SUPERVISOR FERNANDO RAMOS, DEPORTATION OFFICER RANGEL, and JOHN DOES 1-4, | )<br>) Judge John J. Tharp, Jr.<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

For the reasons set forth in the Statement below, the defendants' motion to dismiss [67] is granted and the plaintiff's second amended complaint [62] is dismissed with prejudice. Civil case terminated.

## STATEMENT

On September 8, 2017, this Court dismissed plaintiff Francisco Alberto Romero-Arrizabal's amended complaint without prejudice. *See generally* Order and Statement, ECF No. 61. The Court gave Romero-Arrizabal leave to amend his complaint, and he subsequently filed a second amended complaint. Defendants Fernando Ramos and Lilia Rangel have now moved to dismiss that complaint.

As with Romero-Arrizabal's previous complaint, the second amended complaint is directed against Ramos, Rangel, and four unnamed John Doe defendants. All of these defendants are employees of U.S. Immigrations and Customs Enforcement ("ICE") or the Department of Homeland Security. *See* Second Am. Compl. ¶¶ 6-8, ECF No. 62. Romero-Arrizabal is an El Salvadoran citizen who is currently detained in the custody of ICE. *Id.* ¶ 5. This complaint, like the previous iteration, is brought as an action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for alleged violations of Romero-Arrizabal's rights under the First Amendment and the Eighth Amendment. Second Am. Compl. ¶ 1.[1] (As the Court will explain later, however, with respect to the latter, Romero-Arrizabal's allegations are properly evaluated under the Due Process Clause of the Fifth Amendment rather than the Eighth Amendment.)

---

[1] Romero-Arrizabal also invokes 42 U.S.C. § 1983, but as all of the defendants in this case are federal employees, this suit is properly analyzed under *Bivens* rather than § 1983.

The basic outlines of Romero-Arrizabal's allegations are similar to those in the previous complaint, though he has included some additional details.[2] He states that on July 30, 2014, he was transported by van from the McHenry County Jail to a U.S. Citizenship and Immigration Services facility in Chicago. *Id.* ¶ 9. When the van arrived, all of the other inmates except Romero-Arrizabal were unloaded. *Id.* ¶ 10. He was left shackled in the van, where he remained for approximately 40 minutes. *Id.* ¶¶ 10-11. Romero-Arrizabal alleges that during that time, he "suffered under extreme circumstances," as the van was hot and unventilated, and that he "suffered difficulty breathing, fear, and thought he would die due to the extreme heat." *Id.* ¶ 12. He further asserts that he "continues to suffer permanent bodily and mental injuries" from this event, including "fear for his safety, hyperventilation, and subsequent post traumatic stress disorder, claustrophobia, and panic attacks." *Id.* ¶ 13.

After this incident, Romero-Arrizabal filed a grievance against the ICE officers who left him in the van. *Id.* ¶ 15. He alleges that as a result, the defendants and various other people took a series of actions that were intended to retaliate against him. First, on numerous other occasions, the defendants transported him to Chicago "using the same or similar vans, under the same or similar conditions," despite his requests for alternate means of travel. *Id.* ¶¶ 16-17. This led him to suffer "anxiety, panic attacks, and other physical symptoms." *Id.* ¶ 17.

Second, Romero-Arrizabal alleges that federal employees made various threats against him to coerce him to drop his grievance. These employees, who are not named as defendants, include Ricardo A. Wong, Ricardo Arias of the Department of Homeland Security, and Officer Landmeier of ICE (whose first name is not in the record). Romero-Arrizabal asserts that on one occasion, these three individuals spoke with him and told him that "if he dropped the complaint, everything would be 'good,'" but if he did not, "they would put a charge on him, including a federal charge for lying." *Id.* ¶ 21. He was subsequently removed to another room by Arias and Landmeier, where he was told that "he had to sign deportation papers, or else federal charges would be brought against him." *Id.* ¶ 22. On another occasion, according to Romero-Arrizabal, Arias and Landmeier "attempted to obtain [his] signature on deportation documents despite the fact that the legal status of [his immigration] appeal did not require deportation." *Id.* ¶ 23. The officers displayed various documents that, they said, demonstrated that Romero-Arrizabal would have to be deported, but these representations were false, and the officers would not let him examine the documents closely. *See id.* ¶¶ 24-26. While Rangel and Ramos did not take part in most of this conduct, Romero-Arrizabal alleges that they were present for at least some of the interviews and that both Rangel and Ramos "approved" or "directed and ratified" the conduct of Wong, Arias, and Landmeier. *See id.* ¶¶ 22, 27, 29, 31, 36.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that

---

[2] As it must in evaluating a motion to dismiss, the Court accepts the well-pleaded facts in the complaint as true and draws all permissible inferences in favor of the plaintiff. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A plaintiff does not need "detailed factual allegations," but more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are required. *Twombly*, 550 U.S. at 555. Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

I.  **First Amendment**

A First Amendment retaliation claim requires a plaintiff to "show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations and internal quotation marks omitted). Romero-Arrizabal argues that his filing of a grievance against the ICE officers after the hot van incident was protected activity under the First Amendment. He further asserts that the subsequent actions taken against him, including "attempting to coerce [him] into signing deportation papers, misinforming [him] regarding his immigration status," and threatening him with federal charges, were retaliatory and violated his First Amendment rights. Second Am. Compl. ¶ 35.

In their motion to dismiss, Ramos and Rangel make three principal arguments. First, they contend that Romero-Arrizabal has not plausibly alleged that anything they did constituted a First Amendment violation. Second, they argue that even if they committed any such violation, they are entitled to qualified immunity. And third, they assert that the Court should not recognize a *Bivens* remedy in the context of a First Amendment retaliation claim. Because the Court concludes that the defendants' first argument is correct, it need not address the other two issues.

With respect to Romero-Arrizabal's First Amendment claim, the Court dismissed his previous complaint because it was insufficiently clear what the allegedly retaliatory conduct was and because it did not tie any action to the defendants personally. *See* Order and Statement 2-3. The new complaint provides additional details about the actions that were taken, but what is most striking is that very little of the allegedly retaliatory conduct it describes was committed by the defendants. According to the complaint, the interviews were conducted by Wong, Arias, and Landmeier. These three individuals are not named defendants, and the fact that they have been identified by name in the complaint makes clear that they are not the unnamed "John Doe" defendants either.

Romero-Arrizabal's First Amendment claim, then, rests on two sets of allegations. First, there are things that Wong, Arias, and Landmeier did, for which Romero-Arrizabal argues that Ramos and Rangel are legally responsible. Second, there are a smaller number of things that Ramos and Rangel did themselves. Regarding the former, a "defendant cannot be liable under *Bivens* on the basis of respondeat superior or supervisory liability, rather, there must be individual participation and involvement by the defendant." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). In a *Bivens* action, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Ramos and Rangel, therefore, cannot be liable for the actions of others merely on the basis that they may have

3

held supervisory positions. In this context, a supervisor may be liable for a subordinate's misconduct only "if he wants the unconstitutional or illegal conduct to occur." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc).

Romero-Arrizabal alleges that both Rangel and Ramos "approved" the conduct of Wong, Arias, and Landmeier. Second Am. Compl. ¶¶ 29, 31. Elsewhere, he states that Ramos and Rangel "directed and ratified the actions" taken by those three employees. *Id.* ¶ 36. These allegations are so threadbare and conclusory as to not be entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678. The second amended complaint does not elaborate on these allegations; it is quite unclear what Ramos and Rangel are supposed to have done to approve, direct, or ratify the conduct of other government employees, or to which actions these claims apply. Moreover, it is far from clear that Ramos or Rangel even possessed supervisory authority over these employees. As the defendants point out, an exhibit attached to Romero-Arrizabal's original complaint indicates that around the time of the events described in the complaint, Wong was the director of ICE's Chicago field office. *See* Compl. Ex. 14, ECF No. 1-16; Reply Mem. in Supp. of Defs. Ramos and Rangel's Mot. to Dismiss 4, ECF No. 74. There is no reason to think that Wong was acting under the direction of either Ramos or Rangel.

As for the actions taken directly by Ramos and Rangel, they are also insufficient to state a claim for retaliation. The most significant of these is Romero-Arrizabal's allegation that Rangel "also met with Plaintiff and she attempted to coerce Plaintiff into signing deportation papers. Defendant Rangel threatened to bring federal charges against Plaintiff if he refused to sign." Second Am. Compl. ¶ 30. As the defendants note, however, the "deportation papers" referenced in the complaint include both an I-229(a) form and an accompanying instruction sheet. *See* Mem. in Supp. of Mot. of Defs. Ramos and Rangel to Dismiss ("MTD") 3, 14, ECF No. 68. Romero-Arrizabal attached these forms to his original complaint. *See* Compl. Ex. 13, ECF No. 1-15; Compl. Ex. 14, ECF No. 1-16. Signing such a form does not consent to deportation; rather, it is simply an acknowledgement of receipt of the warnings on the form. *See* MTD 14. Importantly, in his response, Romero-Arrizabal ***does not contest*** that these were in fact the forms that he was presented with, nor does he dispute the defendants' account of the legal significance of signing them. *See generally* Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss ("Response"), ECF No. 73. Being asked to sign such a form does not constitute a "deprivation that would likely deter First Amendment activity in the future." *Bridges*, 557 F.3d at 546.

Finally, the complaint includes general allegations that Ramos and Rangel "retaliated against, threatened physically and intimidated Plaintiff in an attempt to coerce him into dropping his grievance," and that they "continued to threaten physical harm and otherwise intimidate Plaintiff" after he refused to sign a deportation order. Second Am. Compl. ¶¶ 32-33. It is not clear whether these statements are intended to be summaries of the specific conduct recounted above, or independent substantive allegations of other things that the defendants have done. In either case, these statements are wholly conclusory and so are not entitled to a presumption of truth. In short, Romero-Arrizabal's second amended complaint fails to make any non-conclusory allegations that give rise to a claim that the defendants violated his First Amendment rights.

## II. Due Process Clause

In its previous order, this Court concluded that Romero-Arrizabal's allegation that he was left alone and shackled in a heated, unventilated van for 30-40 minutes was insufficient to state a claim that his constitutional rights were violated. *See* Order and Statement 4-5. Romero-Arrizabal's second amended complaint tells essentially the same story about his detention in the van, but he makes two new arguments as to why this complaint should survive a motion to dismiss. First, he contends that this complaint has alleged additional facts about "the severity of the incident and the psychological toll it exerted on him," and that these facts give rise to a plausible claim. Response 2. Second, Romero-Arrizabal argues that his allegations concerning the subsequent van trips provide an additional basis for his suit to go forward. *See id.* at 3. In its previous opinion, the Court treated Romero-Arrizabal's claim regarding the van incident as a challenge to his conditions of confinement. *See* Order and Statement 4. While it is not entirely apparent how best to categorize his claim, the Court adopts the same approach here.

As he did in his previous complaint, Romero-Arrizabal describes his treatment in the van as an Eighth Amendment violation. The Court notes again, however, that for individuals who are detainees rather than convicted prisoners, such claims are properly analyzed under the Due Process Clause of the Fifth Amendment (for those in federal custody, such as Romero-Arrizabal) or the Fourteenth Amendment (for those in state custody). *See id.* at 4 n.4. The legal standards applicable to such claims in this circuit have changed since this Court's previous opinion, and those changes require some elaboration.

Prior to 2018, courts in this circuit recognized the distinction between claims brought by pretrial detainees and those brought by prisoners regarding their treatment while in custody, but tended to evaluate them similarly. The Seventh Circuit acknowledged that pretrial detainees were entitled to "at least the same protection" as was "available to convicted prisoners under the Eighth Amendment." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). In practice, it "typically assessed" the claims of pretrial detainees "under the Eighth Amendment's standards." *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). As a result, the question whether pretrial detainees were entitled to ***more*** protection than convicted prisoners—and, if so, how the legal standards that would govern detainees' claims would differ from those involving prisoners—remained largely unanswered.

Then came the Seventh Circuit's decision last year in *Miranda*. *Miranda* involved a claim for denial of adequate medical treatment brought on behalf of a pretrial detainee. In *Miranda*, the Seventh Circuit held that, with respect to pretrial detainees, these claims are not to be evaluated under a deliberate-indifference standard, as those of prisoners are, but rather are subject to a test of objective reasonableness. *See id.* at 352. The *Miranda* opinion relied heavily on the Supreme Court's 2015 decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which held that courts must evaluate excessive force claims of pretrial detainees under an objective reasonableness standard.

On its face, the holding in *Miranda* was limited to "medical-care claims." *Miranda*, 900 F.3d at 352. Since medical claims are a subset of conditions-of-confinement claims, this Court concludes, as other judges in this circuit have, that the objective reasonableness standard announced in *Miranda* applies generally to conditions-of-confinement claims brought by

detainees. *See Sibley v. Dart*, No. 17-cv-6298, 2019 WL 670270, at *2 (N.D. Ill. Feb. 19, 2019); *McWilliams v. Cook County*, No. 15-cv-53, 2018 WL 3970145, at *5 (N.D. Ill. Aug. 20, 2018); *Moore v. Germaine*, No. 18-cv-1378-JPG, 2018 WL 4027575, at *2 (S.D. Ill. Aug. 23, 2018). The Court also finds the analysis in these cases, and particularly in *Sibley*, regarding **how** *Miranda* should be understood to affect the inquiry into conditions of confinement for detainees to be persuasive. When a prisoner challenges his conditions of confinement, two elements are required to establish that the Eighth Amendment has been violated. First, there must be "an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate 'the minimal civilized measure of life's necessities.'" *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, there must be "a subjective showing of a defendant's culpable state of mind." *Id.* For suits by prisoners under the Eighth Amendment, "the mental state of the prison official must have been one of deliberate indifference to inmate health or safety." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016). For detainees, however, the analysis is now different. After *Miranda*, a detainee bringing a conditions-of-confinement claim under the Due Process Clause "need only allege that 'defendant's conduct was objectively unreasonable'—**in addition to** alleging that the conditions of confinement were sufficiently serious." *Sibley*, 2019 WL 670270, at *3 (quoting *McWilliams*, 2018 WL 3970145, at *5) (emphasis added).

In other words, for detainees, the conditions-of-confinement inquiry remains a two-part test, and *Miranda* altered only one of the two prongs. *Miranda* modified the requirement for what the defendant's mental state must be with respect to the detainee's conditions of confinement, replacing the deliberate-indifference standard with one of objective unreasonableness. But it did not change the governing standards regarding the severity of the conditions that would qualify as a constitutional violation under the Due Process Clause. A detainee must still demonstrate that the conditions of confinement are "sufficiently serious," which is to say that they must deny the detainee "the minimal civilized measure of life's necessities."[3]

In Romero-Arrizabal's second amended complaint, he makes new allegations about the level of suffering he endured in the van and the injuries he has sustained as a result. *See* Second Am. Compl. ¶ 12 ("He suffered difficulty breathing, fear, and thought he would die due to the extreme heat."); *id.* ¶ 13 ("Plaintiff suffered and continues to suffer permanent bodily and mental injuries, including fear for his safety, hyperventilation, and subsequent post traumatic stress disorder, claustrophobia, and panic attacks."). The essence of what Romero-Arrizabal alleges was done to him by the defendants, however, is the same as in the previous complaint. Again, Romero-

---

[3] One other distinction that the Supreme Court has recognized between the two constitutional provisions at issue is that while the Eighth Amendment protects prisoners against cruel and unusual punishments, the Due Process Clause protects detainees against any conditions that amount to punishment. *See Kingsley*, 135 S. Ct. at 2473-75; *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Punishment can either "consist of actions taken with an 'expressed intent to punish'" or those that "are not 'rationally related to a legitimate nonpunitive governmental purpose'" or appear excessive in relation to that purpose. *Kingsley*, 135 S. Ct. at 2473 (quoting *Bell*, 441 U.S. at 538, 561). Romero-Arrizabal has not advanced the argument that he was subjected to "punishment" by this definition, nor has he pleaded sufficient facts to allow the Court to reach the conclusion that he has stated a colorable claim under this metric.

Arrizabal alleges that he was left shackled in a hot, unventilated van for approximately 40 minutes. *Id.* ¶¶ 10-12. He alleges that he "suffered under extreme conditions," including "extreme heat." *Id.* ¶ 12. The Court notes again, however, that according to the National Oceanic and Atmospheric Administration, the recorded high temperature at Chicago's O'Hare International Airport on July 30, 2014, was 79 degrees Fahrenheit. *See* Order and Statement 5 n.5. It also observes that there is no indication in the second amended complaint that Romero-Arrizabal ever sought or asked for medical treatment for his alleged injuries. This Court determined that the allegations in Romero-Arrizabal's earlier complaint did not rise to the level of a denial of the minimal civilized measure of life's necessities. *See id.* at 4-5. Because the allegations in the second amended complaint are substantially the same as in the previous version, the Court comes to the same conclusion here.

Romero-Arrizabal contends that courts have determined that constitutional violations were committed under similar circumstances to those in this case, and cites *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), as his only example. *See* Response 3. That case, however, is distinguishable for multiple reasons. First, on its facts, *Burchett* involved a plaintiff who was held and handcuffed in a police car for three hours when the outside temperature was 90 degrees. *Burchett*, 310 F.3d at 940. That means the duration of the incident in *Burchett* was at least four times longer than the one in this case, while the outside temperature was significantly hotter. Second, *Burchett* was a Fourth Amendment case. Unlike Romero-Arrizabal, who was already subject to detention long before the van incident, the plaintiff in *Burchett* was left in the police car as the means of effecting the initial seizure. What the Sixth Circuit ultimately concluded in *Burchett* was that the plaintiff's Fourth Amendment right against unreasonable seizures had been violated. *Id.* at 945. That is not a claim that Romero-Arrizabal has advanced in this case. Nor is it a claim that would have been available to him even if he had tried to make it.[4] The legal standards applicable to Romero-Arrizabal's claim are fundamentally different from the ones that governed the outcome in *Burchett*.

The Court also determines that the allegations that the defendants transported Romero-Arrizabal in a van on multiple occasions after the hot van incident do not rise to the level of a constitutional violation. Romero-Arrizabal states that "he was repeatedly subjected to nearly identical van trips," Response 3, but they were only "nearly identical" in the sense that he was transported in a van. He does not allege that the van was overheated on any of those subsequent trips, nor that he was left alone in the van. *See* Second Am. Compl. ¶¶ 16-17. As the defendants correctly note, it does not violate the Constitution for the government to use a van to transport detainees. Romero-Arrizabal has not cited any authority for the implicit proposition that, after the hot van incident, the government was constitutionally obligated to find alternate means of transporting him on subsequent occasions. The Court concludes, therefore, that the government

---

[4] The Seventh Circuit has held that while the protections of the Fourth Amendment apply at arrest and through a probable cause hearing, "due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause." *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Romero-Arrizabal has not contended that he had not been subject to a probable cause determination at the time of the van incident, and there is nothing in the record that would indicate that this was the case.

7

had no such obligation, and that Romero-Arrizabal has not stated a plausible claim under the Due Process Clause.[5]

*   *   *

For all of these reasons, Romero-Arrizabal's second amended complaint is dismissed. Because the Court determines that it would be futile to allow him to amend the complaint once again, this dismissal is with prejudice. Civil case terminated.[6]

Dated: March 20, 2019

John J. Tharp, Jr.
United States District Judge

---

[5] To the extent that Romero-Arrizabal also appears to suggest that the subsequent van trips constituted acts of retaliation under the First Amendment, *see* Second Am. Compl. ¶ 35, the Court rejects this argument as well. Transporting a prisoner or detainee in a van is not a "deprivation that would likely deter First Amendment activity in the future." *Bridges*, 557 F.3d at 546.

[6] The Court thanks recruited counsel for their able representation of Romero-Arrizabal in this case.

8